UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROBERT DROP, | Case No.  22-cv-04436-WHO |
| Petitioner, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| TRENT ALLEN, | Re: Dkt. No. 9 |
| Respondent. | |

Petitioner Robert Drop ("Drop") seeks federal habeas relief from his state convictions. Petition ("Pet.") [Dkt. No. 1].  Respondent Trent Allen, Acting Warden ("Allen"), moves to dismiss claims one and three on the grounds that Drop did not exhaust state remedies.  Motion ("Mot.") [Dkt. No. 9].  Because Drop did not exhaust those claims, Allen's motion is GRANTED. Claims one and three are DISMISSED.  By October 27, 2023, Drop must decide whether to proceed solely with claim two or file a motion to stay this suit so he can return to state court to attempt to exhaust claims one and three.[1]

## BACKGROUND

In 2017, Drop was convicted in state court of committing sex crimes against a child under fourteen and received a sentence of 65 years to life.  Pet. at 2:21-24.  The California Court of Appeal affirmed Drop's conviction on direct review.  *Id.* at 3:1-2.  The California Supreme Court denied review.  *Id.* at 3:3-4.  Drop filed this federal habeas petition on August 1, 2022, and the government now moves to dismiss claims one and three.  *See id.*

Drop raises three federal due process claims in his 28 U.S.C. § 2254 petition.  In claim

---

[1] Respondent also moves to dismiss part of claim one, on the grounds a portion of the claim is procedurally barred.  Mot. at 4; Reply at 4-6.   As claim one is dismissed for failure to exhaust, I need not reach the applicability of a partial procedural bar to claim one.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    one, Drop contends that the trial court erroneously admitted testimony about child sexual abuse

2    accommodation syndrome ("CSAAS").  Drop argued that the state trial court "denied his federal

3    constitutional right to due process . . . [when it] erroneously admitted testimony about [CSAAS]."

4    Pet. ¶ 15; Memorandum in Support at 18:6-9.  In claim two, Drop alleges that the trial court

5    erroneously instructed the jury that child sexual abuse syndrome evidence could be used to

6    evaluate the credibility of the complainant.  In claim three, Drop states that the trial court

7    erroneously admitted images found in the temporary internet files of the computer.  Drop asserts

8    that the state trial court "denied his federal constitutional right to due process . . . [when it]

9    erroneously admitted images found only in the temporary internet files [of] the computer."  Pet. ¶

10   23; Memorandum in Support at 19:11-14.

11        Allen moves to dismiss claims one and three for failure to exhaust.  Mot. at 2:14-3:26.

12   Drop opposes, arguing that claims one and three were fully exhausted as federal claims in state

13   court.  Oppo. at 2–5.

14                                  **LEGAL STANDARD**

15        State prisoners who wish to challenge either the fact or length of their confinement in

16   federal habeas proceedings must first exhaust state judicial remedies, either on direct appeal or

17   through collateral proceedings, by providing a fair opportunity for the highest state court available

18   to rule on the merits of every claim they seek to raise in federal court.  *See* 28 U.S.C. § 2254(b),

19   (c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40 (1999); *Cooper v. Neven*, 641 F.3d

20   322, 326 (9th Cir. 2011); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994); *Rose v. Lundy*, 455

21   U.S. 509, 515–16 (1982).  A state's highest court must be given an opportunity to rule on the

22   claims, even if review is discretionary.  *See O'Sullivan*, 526 U.S. at 845 (petitioner must invoke

23   "one complete round of the State's established appellate review process.").

24        To comply with the fair presentation requirement, a claim must be raised at every level of

25   appellate review; raising a claim for the first time on discretionary review to the state's highest

26   court is insufficient.  *Casey v. Moore*, 386 F.3d 896, 918 (9th Cir. 2004) (holding that where

27   petitioner only raised federal constitutional claim on appeal to the Washington State Supreme

28   Court, they failed to fairly present the claim).  A federal district court may not grant the writ unless

                                         2

1    state court remedies are exhausted or there is either "an absence of available state corrective

2    process" or such process has been "rendered ineffective." *See* 28 U.S.C. § 2254(b)(1)(A)-(B).

3           It is not enough to merely present a claim to the state's highest court. *See Johnson v.*

4    *Zenon*, 88 F.3d 828, 829–30 (9th Cir. 1996). A petitioner must also apprise the state's highest

5    court that she is bringing a claim under the United States Constitution. *Kelly v. Small*, 315 F.3d

6    1063, 1066 (9th Cir. 2003) (overruled on other grounds by *Robbins v. Carey*, 481 F.3d 1143 (9th

7    Cir. 2007)). A petitioner must explain "both the operative facts and the federal legal theory on

8    which [their] claim is based[,] so that state courts have a 'fair opportunity' to apply controlling

9    legal principles to facts bearing upon [their] constitutional claim." *Id.* (citations and internal

10   quotation marks omitted); *see also Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008).

11          "A claim is not 'fairly presented' if the state court 'must read beyond a petition or a brief

12   . . . to find material' that alerts it to the presences of a federal claim." *Wooten*, 540 F.3d at 1025

13   (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)); *see also*, *Gatlin v. Madding*, 189 F.3d 882,

14   888 (9th Cir. 1999). "Consistent with the recognition that state and federal courts are jointly

15   responsible for interpreting and safeguarding constitutional guarantees . . . [a] citation to either a

16   federal or state case involving the legal standard for a federal constitutional violation is sufficient

17   to establish exhaustion." *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (affirming that

18   "citation to either a federal or state case involving the legal standard for a federal constitutional

19   violation is sufficient to establish exhaustion"). But "general appeals to broad constitutional

20   principles, such as due process, equal protection, and the right to a fair trial," do not establish

21   exhaustion. *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citation omitted). The claim

22   "must include reference to a specific federal constitutional guarantee, [and] a statement of facts

23   which entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

24   **I.    CLAIM ONE**

25          Drop argues that he exhausted claim one of his 28 U.S.C. § 2254 petition based on the

26   admission of CSAAS evidence in state court because he "raised [it] in [his] state appellate brief,"

27   and subsequently in his "petition for review before the California Supreme Court." Oppo. at 3.

28   As support, Drop points to the citation to *People v. Julian*, 34 Cal. App. 5th 878, 886 (2019) in his

1    Appellate Opening Brief ("AOB"), for the proposition "that the admission of expert [CSAAS]

2    evidence deprived [him] of a *fair trial*" as the testimony was used to "bolster" the credibility of the

3    victim's testimony.  Oppo. at 3 (citing Ex. A, Drop's AOB at 41).[2]

4         Drop did not, however, raise any federal constitutional theory in support of the fair trial

5    claim in his AOB.  The question is whether Drop's citation to *Julian* alone was sufficient to

6    exhaust this claim.  Citation to a state court authority can exhaust a claim for federal habeas

7    purposes but only if that case squarely discusses the "legal standard for a federal constitutional

8    violation," *Castillo*, 399 F.3d at 999, and is not merely in support of a "general appeal[] to broad

9    constitutional principles, such as due process, equal protection, and the right to a fair trial."

10   *Hiivala*, 195 F.3d at 1106.  As Drop points out, the *Julian* decision cites to *Snowden v. Singletary*,

11   135 F.3d 732, 739 (11th Cir. 1998), a federal case where the court held that "a state evidentiary

12   error [rose] to a federal constitutional error."  *Id.*  However, the mere citation to *Julian* which then

13   relies on *Singletary* for the proposition that *some* evidentiary errors can rise to the level of a

14   federal constitutional error is insufficient to show a federal law-based constitutional error was

15   raised to the California Court of Appeal.  At the Court of Appeal, Drop argued that admission of

16   the CSAAS testimony violated his rights to a fair trial under state law.  It was not framed as a

17   federal constitutional violation under federal law.  *See O'Sullivan*, 526 U.S. at 839–40; *Cooper*,

18   641 F.3d at 326.[3]

19        Drop separately argues that he referenced a specific constitutional guarantee and facts in

20   support at page 49 in his AOB.  Oppo. at 3-4.  There, he argued that admission of the CSAAS

21   evidence "impermissibly shifted" the burden of proof in favor of the prosecution in violation of

22

23   _____

24   [2] The *Snowden* court concluded that "a state evidentiary error [can] rise to a federal constitutional error . . . [when] expert testimony [is used] to boost the credibility of the main witness against [the defendant]."  135 F.3d at 739.

25   [3] One exception to this rule is if the California Court of Appeal decided the outcome of a claim under federal law. Then, even if not relied on by a petitioner, the Court of Appeal's invocation of

26   federal authority could exhaust the claim for federal purposes. *See Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000). Here, the California Court of Appeal did not identify or apply federal

27   law in rejecting error based on admission of CSAAS evidence in its opinion.  *See People v. Drop*, Case No. H044970, 2021 WL 958567, at *3–4 (Cal. Ct. App. Mar. 12, 2021).  This exception does

28   not apply.

due process clauses of both the federal and state constitutions.  AOB at 49 ("Such shifting of a

burden of proof is a violation of the due process clauses of our federal and state constitutions.  (US

Const. Amend V and XIV)").  Page 49 of his AOB discusses claim two, his challenge to the jury

instruction regarding CSAAS (CalCrim 1193), arguing that the instruction is fundamentally unfair.

*See* AOB 49-50.[4]  Despite presenting the two claims separately in his AOB and again here in his

federal Petition, Drop argues that claim one in his Petition (the erroneous admission of evidence)

is essentially "intertwined" with claim two (the erroneous jury instruction).  Oppo. at 3–4.  If Drop

were correct, and claim one and claim two were necessarily intertwined, he could proceed here

with claim one because claim two was exhausted.[5]

I find that the claims are not sufficiently intertwined: the challenge to admissibility under

claim one does not "clearly imply" an error in the instruction in claim two or vice versa.  *See*

*Wooten*, 540 F.3d at 1025.  As Allen points out, claim one regards the "admissibility" of CSAAS

evidence and claim two regards the fairness of the CSAAS jury instruction.  Each claim was

presented separately to the California Supreme Court.  *See* Ex. B, Dkt. No. 9-1, California

Supreme Court Petition for Review ("Cal. Pet.").  The separation of the question of admissibility

of CSAAS evidence under state law in claim one from the use of the CSAAS instruction in claim

two at every step of Drop's challenge to his conviction was a logical and apparently strategic

choice of counsel.  *Compare* Cal. Pet. at 9-12 (Drop asked California Supreme Court to review

"whether, and under what circumstances, trial courts should permit" CSAAS and relying

exclusively on California law) *with* Cal. Pet. at 13-16 (raising the argument that the jury

instruction improperly shifted the burden from the prosecution, in violation of federal due process

---

[4]  Drop also argues that he identified and relied on a federal theory in his AOB when he argues "the cumulative effect of errors [made by the trial court] deprived the [him] of a fair trial and due process."  Oppo. at 3, citing AOB at 60.  However, no federal constitutional provision or federal case was identified or relied on in the cumulative error section of Drop's AOB.  *See* AOB at 60-61.

[5]  The Ninth Circuit has explained "a petitioner has 'fairly presented' a claim not named in a petition if it is 'sufficiently related' to an exhausted claim.  Claims are 'sufficiently related' or 'intertwined' for exhaustion purposes when, by raising one claim, the petition clearly implies another error.  This exception does not apply when language in a petition for review indicates a petitioner's 'strategic choice' not to present an issue for review."  *Wooten*, 540 F.3d at 1025 (quoting *Lounsbury v. Thompson*, 374 F.3d 785, 788 (9th Cir. 2004)).

United States District Court
Northern District of California

1    rights).  Because of that strategic choice, the claims are not necessarily intertwined.

2        For those reasons, Allen's motion to dismiss claim one for failure to exhaust is

3    GRANTED.

4    **II.    CLAIM THREE**

5        Drop argues that he exhausted claim three—that the trial court impermissibly admitted

6    images found in the temporary internet files of the computer—in state court by identifying it as a

7    due process violation in both his California Court of Appeal brief and in his California Supreme

8    Court petition.  Oppo. at 4–5 (quoting AOB at 53 & Cal.Pet. at 19).  In both his AOB and his

9    petition to the California Supreme Court, Drop cited to and relied upon *United States v. Flyer*, 633

10   F.3d 911, 917 (9th Cir. 2011).  *See* AOB at 53 & Cal.Pet. at 19.  The only way this claim is

11   exhausted is if *Flyer* squarely discusses the "legal standard for a federal constitutional violation,"

12   *Castillo*, 399 F.3d at 999, and is not merely in support of a "general appeal[] to broad

13   constitutional principles, such as due process, equal protection, and the right to a fair trial."

14   *Hiivala*, 195 F.3d at 1106.

15       Allen argues that Drop's citation to *Flyer* is insufficient to identify federal constitutional

16   grounds for his claims based on the admissibility of computer images.  In *Flyer*, the court

17   considered "the constitutional sufficiency of evidence to support a criminal conviction" under the

18   two-step test announced in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *Flyer*, 633 F.3d at 917.

19   Applying that test and considering the evidence at trial, the Ninth Circuit vacated a conviction for

20   "knowing possession" of child pornography on certain dates where there was "no evidence that

21   Flyer knew of the presence of the files on the unallocated space of his Gateway computer's hard

22   drive. The government also concedes it presented no evidence that Flyer had the forensic software

23   required to see or access the files . . . there is no evidence here that Flyer had accessed, enlarged,

24   or manipulated any of the charged images, and he made no admission that he had viewed the

25   charged images on or near the time alleged in the indictment."  *Id*. at 919.

26       The challenge Drop raised in his petition for review by the California Supreme Court,

27   however, was not about the sufficiency of evidence supporting his conviction but about

28   admissibility of one type of propensity evidence.  *See* Cal. Pet. at 17-19 (asking review to be

United States District Court
Northern District of California

6

granted to determine "whether images found only in temporary internet files can be admitted against a defendant when there is no proof he must have viewed or saved the images").  Drop argued that the images should not have been admitted as uncharged "propensity" evidence given that insufficient evidence existed that he "possessed" those images under state law.  That is the same claim he raises in his federal habeas Petition; challenging the admissibility of the propensity evidence.  Pet. ¶¶ 22-25.  But Drop's citation to *Flyer* – which simply applied existing federal law governing sufficiency of the evidence for the specific federal offense of possession of child pornography – does not exhaust his state law challenge to admissibility of the propensity evidence relevant to his state law charge.[6]

The motion to dismiss claim three for failure to exhaust is GRANTED.

## CONCLUSION

Allen's motion to dismiss is GRANTED.  Claims one and three are DISMISSED.  By October 27, 2023, Drop must decide whether to proceed solely with claim two, or file a motion to stay this suit so he can return to state court to attempt to exhaust claims one and three.

**IT IS SO ORDERED.**

Dated: September 26, 2023



William H. Orrick
United States District Judge

---

[6]  Drop does not raise a sufficiency challenge – the central question in *Flyer* – presumably because the jury considered significant evidence supporting Drop's conviction for committing sex crimes against a child under fourteen including expert testimony, and the testimony of the victim and other witnesses, including the victim's mother.  *See People v. Drop*, Case No. H044970, 2021 WL 958567, at *1 (Cal. Ct. App. Mar. 12, 2021), *review denied* (May 26, 2021).

United States District Court
Northern District of California