UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DROP,<br><br>    Petitioner,<br><br>    v.<br><br>TRENT ALLEN,<br><br>    Respondent. | Case No. 22-cv-04436-WHO<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Robert Drop seeks federal habeas relief because his due process right to a fair trial was violated when the state trial court instructed the jury under CALCRIM No. 1193 that child sexual abuse accommodation syndrome (CSAAS) evidence could be considered to evaluate the credibility of an alleged victim. This claim has no merit and Drop's petition is DENIED.

**BACKGROUND**

In 2017, Drop was convicted of several sexual crimes based on his abuse of his stepdaughter, J.D. *See* Ans., Dkt. No. 18, Ex. E State Appellate Opinion *People v. Drop*, No. C1241676, 2021 WL 958567, at *1 (Cal. Ct. App. March 12, 2021). The basis of this habeas petition is Drop's objection at trial to the admission of expert testimony from Dr. Blake Carmichael pertaining to CSAAS, which the trial court overruled. *Id.* at *2, 3.

As summarized by the California Court of Appeal on direct review, Dr. Carmichael explained at trial how sexually abused children delay reporting abuse because of the "power differential" between the child and abuser. *Id.* He testified that when children do disclose the abuse, they tend to give inconsistent accounts of events. *Id.* At the close of evidence:

> The jury was instructed on the permissible use of CSAAS evidence with CALCRIM No. 1193 as follows: "You've heard testimony from Dr. Blake Carmichael regarding [CSAAS]. The doctor's testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him. You may consider the evidence only

> in deciding whether or not [J.D.'s] conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony."

*Id.* at *6.

The jury found Drop guilty of one count of continuous sexual abuse of a child under 14, one count of aggravated sexual assault, and two counts of sexual intercourse or sodomy with a child ten years or younger. *Id.* at *1. The trial court sentenced him "to an indeterminate term of 65 years to life consecutive to a determinate term of 16 years in prison." *Id.*

Drop appealed the conviction; the California Court of Appeal for the Sixth District affirmed the judgment. *Id*. at *10. The California Supreme Court denied review. Pet. at ¶ 12, Dkt. No. 1. Drop then filed this habeas petition, asserting three claims for relief. *Id*. On respondent's motion, I dismissed claims one and three for failure to exhaust those claims in state court. Order Granting Mot. To Dismiss at 1: 15-16, Dkt. No. 15. I gave Drop the option of staying this petition while he exhausted those claims or proceeding solely on claim two. *Id*. at 16-18. He decided to proceed with only claim two, challenging the state court's use of the CALCRIM No. 1193 instruction. *See* Dkt. No. 16.

## LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (ADEPA), a federal court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to judgment of a [s]tate court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

Drop's sole claim for habeas relief challenges the trial court's use of CALCRIM No. 1193 as a denial of his rights to due process under the Fifth, Sixth, and Fourteenth Amendments. In state court, and here, Drop argued that CALCRIM No. 1193 impermissibly allows the jury to use CSAAS evidence to evaluate the credibility of the complainant. The California Court of Appeal rejected that challenge:

> We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) In so doing, we consider the instructions as a whole to determine whether there is a "'reasonable likelihood that the jury construed or applied the challenged instruction in an objectionable fashion.'" (*People v. Osband* (1996) 13 Cal.4th 622, 679.) We assume the jurors are "capable of understanding and correlating all jury instructions which are given." (*People v. Romo* (1975) 47 Cal.App.3d 976, 990, disapproved on other grounds in *People v. Bolton* (1979) 23 Cal.3d 208, 213-214.)
>
> In *People v. Gonzales* (2017) 16 Cal.App.5th 494 (*Gonzales*), the defendant argued that "the misleading language of CALCRIM No. 1193 allowed the CSAAS testimony to be used as proof that [the victim] was molested," and that it was "impossible to use CSAAS testimony to evaluate the believability of [the victim's] testimony using it as proof that [defendant] committed the charged crimes." (*Id.* at p. 503.) The Court of Appeal rejected these arguments, noting that the instruction was given in the context of the expert's testimony that CSAAS is a tool to understand a child's reactions when she claims she has been abused and is not to be used to determine whether the abuse has occurred. (*Id.* at pp. 503-504.) The court held that a "reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the CSAAS] testimony to conclude that [the victim's] behavior does not mean she lied when she said she was

3

> abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the victim] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior." (*Id.* at p. 504.)
>
> As in *Gonzales*, we conclude that no reasonable juror could have concluded from the language of CALCRIM No. 1193 that he or she could properly use the CSAAS evidence as a basis for determining whether the charged offenses occurred. Here, Dr. Carmichael testified that CSAAS is only an educational tool used to dispel common myths about sexual abuse, and it is not a diagnostic tool to prove that sexual abuse occurred. Further, CALCRIM No. 1193 told the jury that the CSAAS evidence "is not evidence that the defendant committed any of the crimes charged against him." (Italics added.) It also told the jury that [] they could "consider this evidence only in deciding whether or not the conduct of [J.D.] was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony." We must presume the jury followed the court's instructions. (*People v. Wilson* (2008) 44 Cal.4th 758, 834.)
>
> While it is true that evaluating an alleged sexual abuse victim's "believability" may ultimately assist the jury in determining whether to credit the victim's testimony that the abuse occurred, the same may be said of any evidence that is admitted solely on the issue of a witness's credibility. (See *People v. Brackins* (2019) 37 Cal.App.5th 56, 70-72 [expert testimony about intimate partner violence "could properly be used by the jury evaluate" the believability of victim's abuse claims].) As CSAAS evidence may properly be used to determine whether a child-victim's conduct was inconsistent with that of a person who has been abused, it is properly used to evaluate a child-victim's credibility. Read as a whole, the instruction properly advised the jury on the limited purpose to which it could put CSAAS evidence. Thus, the trial court did not err in giving CALCRIM No. 1193.

*Drop*, 2021 WL 958567, at *6. Its determination was not contrary to or an unreasonable application of clearly established federal law.

I.   **USE OF CALCRIM 1193 DID NOT VIOLATE DROP'S DUE PROCESS RIGHTS**

   A.   **CALCRIM NO. 1993 DOES NOT IMPROPERLY BOLSTER CREDIBILITY IN VIOLATION OF DUE PROCESS**

Drop identifies alleged inconsistencies between the child-victim's (J.D.'s) preliminary hearing and trial testimonies and contends that J.D.'s credibility was the only issue at trial. Pet. at 13, 14; Mem. of P. & A. at 21. Given those inconsistencies, Drop argues that giving the CALCRIM No. 1193 instruction reduced the prosecution's burden of proof and impermissibly bolstered the complainant's credibility. *Id.* at 7-11; Traverse at 5-6, Dkt. No. 19.

Considering the instruction as a whole and the trial record, this argument fails. To start,

4

1  CALCRIM No. 1193 does not instruct the jury to consider the CSAAS testimony as evidence that
2  the defendant committed the crimes he was charged with.  Reporter's Transcript (10RT) at 2807,
3  Dkt. No. 18, Ex. B, Volume 10.  Instead, the instruction says that the jury may consider Dr.
4  Carmichael's testimony only in deciding whether J.D.'s conduct was consistent with the conduct
5  of someone who had been molested.  *Id.* ("You may consider this evidence only in deciding
6  whether or not [J.D.'s] conduct was not inconsistent with the conduct of someone who has been
7  molested and in evaluating the believability of her testimony.").  "A jury is presumed to follow its
8  instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).   In light of this presumption and the
9  lack of any evidence that the jury did not follow the instruction, Drop cannot show that the use of
10 CALCRIM No. 1193 unconstitutionally reduced the prosecution's burden of proof.

11       Not only did the instruction limit how Dr. Carmichael's testimony could be considered, but
12 Dr. Carmichael made the same point at trial.  He testified that CSAAS is intended to "educate
13 therapists, social workers and dispel some of the myths that people hold with regards to the
14 population of kids who [ ] have been sexually abused," but was not designed as a "diagnosis" or
15 "prescription." 6RT at 1567.  And in closing, the prosecutor emphasized that Dr. Carmichael's
16 testimony could "explain" J.D.'s behavior but that it was not Dr. Carmichael's job to determine
17 whether J.D. had been molested; that was the jury's job.  10RT at 2709.

18       Considering the instruction and the record as a whole, Drop has not shown that the jury
19 was reasonably likely to have applied CALCRIM No. 1193 in a way that impermissibly bolstered
20 J.D.'s credibility or lowered the prosecution's burden of proof.  The jury was instructed to
21 consider the CSAAS non-specific neutral testimony only to evaluate the complainant's credibility
22 and not to use that testimony to infer Drop's guilt.  *See Amaya v. Frauenheim*, 823 F. App'x 503,
23 506 ("[C]redibility is not the same as accuracy."); *Vogt v. Fisher*, No. 20-CV-03130-EMC, 2022
24 WL 1620675, at *17 (N.D. Cal. May 23, 2022), certificate of appealability denied, No. 22-15783,
25 2023 WL 8320024 (9th Cir. Aug. 30, 2023) ("The jury was not instructed to use the CSAAS
26 evidence as proof that a crime had occurred or that the witnesses were telling the truth. []
27 Although the instruction states that CSAAS evidence can be used to evaluate the 'believability of
28 [J.A.]'s testimony' this is consistent with the authority cited above allowing CSAAS evidence to

United States District Court
Northern District of California

1  counter misconceptions about victim behavior. It is also not the same as generally instructing the
2  jury that the CSAAS evidence can show that J.A. was telling the truth."); *see also Rivera v.*
3  *Broomfield*, No. 21-CV-06520-HSG, 2023 WL 4269763, at *10 (N.D. Cal. June 28, 2023)
4  (rejecting an argument that CALCRIM No. 1193 lightened the prosecution's burden of proof);
5  *Carranza v. McDowell*, 2023 WL 3493708, at *11 (C.D. Cal. Apr. 6, 2023), report and
6  recommendation adopted, No. SACV2100874SPGDFM, 2023 WL 6129486 (C.D. Cal. Sept. 18,
7  2023) ("[T]he Court finds that the jury was not reasonably likely to apply [CALCRIM No. 1193]
8  in a way that lowered the prosecution's burden of proof."); *Cabrera v. Cates*, No. 20-CV-01256-
9  JST, 2023 WL 5111981, at *11 (N.D. Cal. Aug. 9, 2023) (rejecting habeas claim based on
10 admission of CSAAS evidence in part because "the jury was properly instructed pursuant to
11 CALCRIM No. 1193"); *Darbouze v. Kibler*, No. 21-04868, 2021 WL 6618675, at *20 (C.D. Cal.
12 Nov. 17, 2021) (rejecting a challenge to CALCRIM No. 1193); *Griffin v. Martinez*, No. 17-01137,
13 2021 WL 4100000, at *14 (E.D. Cal. Sept. 9, 2021) (same).

14 In his Traverse, Drop argues that the cases just referenced are "wrongly decided" to the
15 extent "they conclude that evaluating an alleged sexual abuse victim's believability is different
16 than evaluating whether to credit a supposed victim's testimony that the abuse occurred."
17 Traverse at 3. He cites state law decisions from Kentucky, New Jersey, Pennsylvania, Tennessee,
18 and Ohio that have held that CSAAS expert evidence was unreliable and inadmissible. *Id*. at 4-5.
19 While it may be the case that other states do not allow such testimony, those states' decisions are
20 not binding on California courts. And Drop fails to cite any United States Supreme Court or Ninth
21 Circuit precedent that CSAAS is unreliable, inadmissible, or that the admission of CSAAS
22 testimony with the CALCRIM No. 1193 instruction is unconstitutional. The bar for granting a
23 habeas petition requires that a state court ruling be contrary to *federal* law, not another state's law.
24 The use of CALCRIM No. 1193 was not contrary to or an unreasonable application of established
25 federal law.

26 **B.    CALCRIM NO. 1193 IS NOT UNCONSTITUTIONALLY CONFUSING**
27 Drop also argues that instructing the jury with CALCRIM No. 1193 violated his due
28 process rights because the instruction is "too confusing to accurately and succinctly instruct the

jury on the manner in which [] to receive and consider the evidence . . . ." Mem. of P. & A. at 21: 21. The California Court of Appeal rejected Drop's confusion argument, relying on *People v. Gonzales*, 16 Cal. App.5th 494, 504 (Cal. Ct. App. 2017). The *Gonzales* court explained:

> A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the CSAAS expert's] testimony to conclude that [the victim's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the CSAAS expert's] testimony to conclude [the victim] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the CSAAS expert's] testimony will find both that [the victim's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction.

*Id.*

I am bound by California courts' interpretation of the instruction. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The decision of the California Court of Appeal on direct review, relying on *Gonzales*, was not contrary to or an unreasonable application of established federal law.

## II. THE INSTRUCTION DID NOT HAVE A SUBSTANTIAL AND INJURIOUS EFFECT ON VERDICT

Even if I assumed that the use of CALCRIM No.1193 was erroneous, Drop's petition would still fail because use of the instruction did not have a substantial and injurious effect in determining the jury's verdict. To state a habeas claim based on a jury instruction, a petitioner must show that "the error in the challenged instruction . . . amounted to a constitutional error." *Evanchyk v. Stewart*, 340 F.3d 933, 939 (9th Cir. 2003) (internal citation and quotation marks omitted). The relevant question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal citation omitted); *see also Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) ("The test [ ] is whether the error had substantial and injurious effect or influence in determining the jury's verdict.") (internal citation and quotation marks omitted). A court may not consider an instruction in isolation, but instead must consider it "in the context of the instructions as a whole

7

and the trial record." *Estelle*, 502 U.S. at 72 (internal citation and quotation marks omitted).

As the respondent asserts, the evidence supporting Drop's conviction was significant; CALCRIM 1193 did not have a substantial and injurious effect on the verdict. Mem. of P. & A. in Supp. of Answer at 8: 4-7, Dkt. No. 17. The jury heard testimony from J.D. that chronicled how Drop compelled her to perform sexual acts during a seven-year span. 4RT at 694-749, 761-62. J.D.'s mother testified that: she heard Drop encourage J.D. to perform a sexual act; she saw Drop, naked and erect, in bed with J.D; and Drop would check if J.D. was wearing a bra while she was sleeping, among other conduct. 5RT at 1322; 6RT at 1591-93, 1600-02. Two domestic violence center employees testified that J.D. informed them that she had been sexually abused. 6RT at 1518-26. J.D.'s friend testified that J.D. revealed to her that she had been sexually abused by Drop. 6RT at 1510-14. And J.D.'s brother testified that Drop would walk into the bathroom while J.D. was showering. 5RT at 1285-88.

Given the significant evidence from witnesses other than J.D., Drop cannot demonstrate that the use of CALCRIM No. 1193 "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. Drop's petition for habeas corpus is DENIED.

## CERTIFICATE OF APPEALABILITY

A district court must either grant or deny a certificate of appealability when it enters a final order denying habeas relief. 28 U.S.C. § 2254 R. 11(a). "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right," and it must specify which issues satisfy that standard. 28 U.S.C. § 2253(c)(2)-(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Drop cannot make that showing; therefore, I will not issue a certificate of appealability.

**IT IS SO ORDERED.**

Dated: June 17, 2024



William H. Orrick
United States District Judge